Mr. Court, my name is Tony Shaw, Professor of Arizona. I represent Mr. Stilwell. I'd like to reserve one minute of my time. The key issue on this appeal is the failure of the District Court to credit Stilwell's evidence in response to a motion for service. In failure to consider his evidence, we say that we are most favorable to him in the failure to draw all reasonable conclusions from the evidence in his favor in violation of the Supreme Court's toll of v. Cotton in Rule 36. In reading the District Court's presentation of the facts of the murder we submitted, and comparing them to Mr. Stilwell's, Mr. Stilwell can agree that considering the District Court's discussion of those facts and the legal analysis, we think there are a little 56 errors in this case. For instance, the District Court boiled down all the evidence of adverse actions in the hostile work environment to nothing more, quote, than snowing in opposition. We, as city managers, don't think this is just a bad example. We recognize the inconveniences for the hostile work environment being a victim for our citizens, both from the Chinese. We, as city managers, hold to the hostile work environment, which begins at the end of the fall of 2009, and the damages for the termination, of course, the biggest damages are from the termination. Mr. Stilwell, in the indication that you have the most hostile work environment, you can still contemplate additional damages from the hostile work environment. What would the damages be? Well, the damages were just the worst of work environment. They were mainly also distress damages, and the cost of repatriation damages produced a lot of superintensives for the city, for instance, itself, and particularly after its termination. For instance, if the city management company didn't want to repatriate the city employees, they were there for the promulgation of the environmental policies and the repatriation of the city employees. In addition to that, speaking out about the evidence in the investigation report on the critical issues of use in the management report, such as the failure to discipline employees, and the failure to report sexual harassment claims in notes, the very investigators are confusing by the end. So, he told her, so did this issue, this summary judgment issue, is correct to have one of the two big claims in this case. There's the ADEA retaliation claim, which is a constitutional due process claim, dealing with the impact of modification of the at-will clause. After the retaliation claim, he's saying this court should reverse the district court's grasp for summary judgments insofar as it finds a lack of causal connection between Mr. Stilwell's contempt of conduct, and a little underagent speech in Ms. Smith's, the former HR Director's, ADEA case, and between that and the plaintiff adverse actions of Ms. Smith, as well as the concluding determination. By ignoring his testimony, it is affidavit, that the supervisor's repeated criticism of Mr. Duffy's repeated criticism of his precise contempt of conduct, and including his supervisor's contempt of course of Mr. Stilwell not to even testify, two big issues that happened in June 2008, and then in September 2008, this has been only a little over 18 months, three months for the determination of Mr. Duffy. And I would like to point out something I just thought of yesterday, and I'll be very applicable here. Duffy's criticism of Stilwell's speech, wanting to testify in support of Mr. Duffy, the ADEA, the discrimination case, and being considered to operate without a description of countermeasures, which in Arizona is a crime, so we're not going to talk about countermeasures. This is a case that is not recognized. It's not held straight up. It's just started over. I love the discrimination case, which is titled, Discrimination, Operation, Discrimination, and Duffy and Mr. Cornwell held access to it for him, and she was the HR director, of course she is, and as Mr. Duffy, but also her, as Mr. Duffy, she used to, after, when she supported Mr. Cornwell, she left the ADEA for 16 days, and she parted with the same administrator, Mr. Duffy. And I understand that Mr. Duffy, she didn't tell Mr. Duffy, she also committed to Mr. Duffy, so she's in a separate office department? No, no. No, she, she was committing discrimination on behalf of Mr. Cornwell, and her case is, while we all know this, that's pure. So, and we believe that, as Judge Gould has said, in the Negro v. Steer case, and numerous cases we've studied, self-serving affidavits can be considered on this, and she so well has to do it, in one which we see in the district court, with more than an awful lot of evidence. And there are, the critical part of our case, of the retaliation, is there are four disclosures of protective conduct. In the district court scene, they only talk about one, the first one, which was 15 months before the extermination. And they talk only about the extermination, because they have first and foremost, there's not more. In fact, we do have the first one, which occurred on August 28th, 2009, in a disclosure statement. In the Smith case, and that was, that was the case in the Superior Court, in Bison, even locked out of federal courts. That is, that kind of speech, and numerous, uh, contradicting comments, supported by how, the energy saver's case here, but we're not set on mental health cases. To me, it actually justifies, you need to just express that you're willing to do it. It's protected by both the opposition and the participation clauses. And these answers are usually statutes of the Supreme Court's property versus energy policy government case. And the, the adverse actions start, uh, very shortly after the first disclosure. That was a promise of reinstating back the AMO previous suspension, which is still welcome, which was not given to him to me later, because he was hostile to me. He said harassment, again, by Mr. Duffy, uh, included unwarranted personal allegations against him in the workplace. And even, uh, when the lawyers had a letter in September of 2009 to say, say, stop the harassment, and I even got a reply. I said, I guess it is in the record. Oh. No. I think that's my fault. Uh, I just talked about the first night, and I didn't talk about the second night. Um, uh, there's a dispute, um, there is still no decision. And, then, and, and, and, and, and, and, and, and, and, and, and, and, and, there's a public memorandum going to the city council, which will have the city's own proxies on personal decisions, regarding all that, and,  Mr. Fuller, uh, actually disobeyed Mr. Fuller. From the exact signs of that, the investigator said he was giving, uh, myself, uh, and, and the only evidence which is not here today, and the investigator's report, is that this other candidate had had another, an interesting issue of the arms in this case, that I have to, uh, so long as the determination to do that, in the investigation report, the investigator recognizes Mr. Fuller, the, the host of his job, and he is, and yes, Mr. Fuller's the only one who's doing that violation of the facts, as the incumbent, and Mr. Fuller, who did not, uh, uh, has a manager using, it's a lower level manager, not going to the human resources department, but he was sexually harassed, and also, and the investigator even found Mr. Fuller's documents about, uh, his conduct in the last case, uh, varying, as to his own property. So, sitting, considering all of this, um, um, and also the fact that, I think this is interesting, the district court never wants an adverse action, no one can, uh, cite the likes, the Supreme Court case, which is the case on the facts, and the standards, and security issues, and all the things we talked about, and he didn't cite it. Um, he didn't cite Ray Everson, that, uh, included all of the same adverse actions, which was your undeserved job performance, uh, not supporting your, uh, people, not getting support in your water department, that kind of thing. Um, I'd just like to say just very briefly, there's a lot of issues in this case, but in a due process way, we have an argument, uh, and we cited three Eversonists, three court cases, and they're directly on point, and all in the 1980s, but there's still the law. The district court never cites them, but, they talk about modification of hand-wheeled cars, in the employment contract, uh, and it can be, it can be modified, and it can be under the apparel of the person, the man, or the subject, and it can also be allowed, to ask for it later on. And these, uh, three, I think some of them only got us until it's cool. And then, he said earlier, he wanted to reserve, yes, I only got 40 seconds, so, I'll reserve. Thank you. Thank you. You're right, Everson, uh, it's a matter of, conditioning, uh, the judge, I mean, we're in the U.S., and the judges say, well, the, the, the, the, the, the, the, the, the, the, the, the, the, the, the, the, the, the, the, the, the, the,  the, the,  the,       der, direct. NBA, we, and, we can. we can. we can, we can. we can, we can, we can, can. can.       can. can. can.  can. can. can. can. can. a قد we we we we we 500 500 nanite nanite          nanite nanite nanite nanite nanite nanite nanite nanite nanite nanite nanite nanite nanite nanite nanite nanite           nanit nano nanite  nanite nanite nanite nanite nanite nano nm nano nano  nano nano nano nano nano nano nano nano nano nano Okay. Hello. Okay. Ginny, I'm going to begin my presentation.
judges: Fernandez, Gould, Friedland